IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | DOCKET NO. 3:25CR5-MOC |
| VS. | ) ) ) | GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO PROTECT THE SAFETY |
| TYRELL DESHAUN PACE | ) ) ) ) ) | AND CONSTITUTIONAL RIGHTS OF DEFENDANT, OR, IN THE ALTERNATIVE, MOTION TO RELEASE DEFENDANT |

The United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, responds to the defendant's Motion to Protect the Safety and Constitutional Rights of Tyrell Deshaun Price, or, in the Alternative, Motion to Release Tyrell Deshaun Pace (Document 26, the "Motion"). The Court should deny the Motion in all respects because it should have been brought as a civil action, not as part of a criminal proceeding. The defendant did not allege that the "conditions of confinement" problems detrimentally affected his access to counsel or his exercise of a trial right, and therefore these grievances were not raised in the proper forum.

I. **Procedural Background**

On January 3, 2025, a federal grand jury in Charlotte, North Carolina, indicted the defendant with three counts of financial institution fraud (18 U.S.C. § 1344(2). Pace entered his guilty plea to all three counts on August 29, 2025. No sentencing hearing has been set. The defendant arrived at Pike on September 4, 2025.

On October 7, 2025, the defendant filed his Motion, and he listed four major problems at Pike:

- the facility is grossly overcrowded;

- the facility fails to provide necessities of living to inmates in sufficient quantities;

- the living space is unsanitary; and

- the medical treatment is not provided in a timely fashion or at all, and there are no mechanisms for inmates to report a medical emergency.

Regarding this fourth allegation, Defendant does not report any instances of this deficiency impacting him personally. Defendant goes on to identify more specific deficiencies with Pike as it relates to him, personally, but these deficiencies fall into one of the categories outlined above. In support of his Motion, Defendant attached a letter sent by the Federal Public Defender to the U.S. Marshal for the Western District of North Carolina on October 1, 2025, which outlines many of the same alleged deficiencies as Defendant's Motion, which is more general in nature and not regarding this Defendant specifically.

Importantly, in his Declaration (Exhibit 4 to the Motion), Pace responded to a question about communication with his attorney:

> 12. Statement about confidential access to attorney: I call my attorney from the phone on the wall. If I have a confidential call, they say I have to ask a captain or sergeant. I've never seen a captain or sergeant on the floor.

The defendant did not mention an instance in which he wanted to communicate with his attorney, but that opportunity was denied.

As a result of these conditions at Pike, Defendant requested the Court to transport him to a facility that "(1) comports with the Eighth Amendment of the United States Constitution and (2) is within the state of North Carolina so in-person communication with undersigned counsel is practical. Should no such relief be available, he seeks in the alternative an order setting conditions of release."

2

Case 3:25-cr-00005-MOC-DCK    Document 29    Filed 10/21/25    Page 2 of 10

## II. Conditions at Pike

Leaders at Pike contest the allegations in the defendant's filing and attached letter. See Affidavits (Exhibits 1 and 2). While they acknowledge the facility is statistically over capacity (*see* Doc. No. 122-3.), these statistics are not specific to housing federal inmates, and they contend the facility nevertheless provides necessities of living to inmates in sufficient quantities. Pike staff members further contend the facility is sanitary. Finally, Pike leadership disputes that medical treatment is not provided and contends that the prison staff provides necessary medications and medical care to inmates.

But the Court need not solely rely on the word of Pike staff. State detention facilities that house federal inmates, like Pike, operate under contract with the United States Marshals Service ("USMS"). These facilities do not operate unchecked. One of the ways in which the USMS confirms that a state detention facility is operating in compliance with federal standards for safety, security, and humane conditions is to conduct a detention facility review ("DFR"). The USMS conducted a DFR at Pike on August 20, 2025. Additionally, on October 3, 2025, in response to the Federal Defender's allegations of poor conditions at the facility, a Deputy U.S. Marshal conducted an unannounced "spot check" at Pike. The USMS concluded that Pike is in substantial compliance with their contractual obligations.

## III. Legal Analysis

### a. Challenges to Conditions of Confinement Must Ordinarily be Brought Through a Civil Action.

As a general rule, it is well-established that federal prisoners cannot challenge their conditions of confinement in their criminal cases. Instead, the proper procedure is to file a civil lawsuit after exhaustion of administrative remedies. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) ("[A] prisoner who challenges the conditions of his confinement must do

3

so through a civil rights action."); *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) ("Because Appellants' claims were raised in motions filed in their respective criminal cases and not in civil rights complaints comporting with the requirements of *Bivens* [*v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)], they were properly denied by the district court."); *United States v. Darcy*, No. 1:17-CR-00036-MR-WCM, 2020 WL 2573251, at *4 (W.D.N.C. May 21, 2020) ("[T]o the extent that the Defendant is seeking to challenge the conditions of his confinement, the Defendant is advised that any such claims must be brought in a civil action. He cannot challenge the conditions of his confinement through a motion in his criminal case."), *aff'd*, 835 F. App'x 702 (4th Cir. 2021); *United States v. Luong*, CR 99-433WBSGGH, 2009 WL 2852111, at *1 (E.D. Cal. Sep. 2, 2009) (unpublished) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties pursuant to 42 U.S.C. § 1983, rather than a motion in his criminal case.") (citing cases); *United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003) ("[W]e hold that the DNA Act's provision for the BOP's collection of federal offenders' DNA during incarceration is not part of appellants' sentence, but is rather a prison condition that must be challenged through a separate civil action after exhaustion of administrative remedies."); *United States v. Wade*, 307-CR-00111-RRB-JDR, 2009 WL 3837151, at *1 (D. Alaska Nov. 13, 2009) (unpublished) ("Any claims concerning the conditions of confinement cannot be brought in the federal criminal case.").

One of the reasons a civil suit is the only proper course is because it requires the exhaustion of administrative remedies, preventing Defendants from short-cutting that process and interrupting criminal proceedings with each jail grievance. "Permitting defendant to file

grievances in his criminal proceeding not directly related to his ability to exercise his rights in that proceeding would circumvent his obligation to exhaust administrative remedies before seeking redress in court." *Luong*, CR 99-433WBSGGH, 2009 WL 2852111, at *1 (citations omitted). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Ontiveros v. Los Angeles County*, 611 F.Supp.2d 1090, 1094 (C.D.Cal.2009) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007))); *see also Rich v. Zitnay*, 644 F.2d 41, 42 (1st Cir.1981) ("If plaintiffs' complaint were an unconstitutional lack of necessities such as food or heat it appears that they should ordinarily sue their present custodians for relief.... [T]he prisoners' immediate custodians, would ... be the proper parties for remedying the wrong."); *United States v. Hogsett*, Case No.: 2:20-cr-68-FtM-38NPM, 2020 WL 3490191, at *2 (M.D. Fla. June 26, 2020) ("Claims of inadequate medical treatment about Defendant's conditions of confinement involve the Marshal and Sheriff of Charlotte County who are responsible for Defendant's custody and care. Entertaining Defendant's motion here does not properly apprise them or allow them to defend the claim.").

    As the Court can see, procedures exist to resolve these claims through civil actions. But even before seeking civil relief, a defendant must first exhaust his administrative remedies. Here, however, Defendant is attempting to circumvent the process of civil litigation, where parties have litigation rights such as discovery. This Court should not permit an end around the civil litigation process by granting the defense's request here.

b. **Criminal Proceedings Can Only Entertain Challenges to Conditions of Confinement Where the Conditions Impede a Defendant's Access to Counsel or the Exercise of a Trial Right.**

District courts in criminal cases can only consider prison conditions in a criminal case where the condition itself is preventing a defendant from consulting with counsel or exercising other trial rights. *See United States v. Yandell*, No. 2:19-CR-00107-KJM, 2021 WL 4777113, at *3 (E.D. Cal. Oct. 13, 2021) ("Federal courts have made one exception to this rule for challenges to conditions that prevent a defendant from consulting with counsel or exercising other trial rights."); *United States v. Kahn*, Case No. 17-CR-0029-ABJ 2019 WL 3977353 (D. Wyoming Mar. 29, 2019) ("beyond ensuring a detained defendant's reasonable access to counsel and ability to prepare their defense, the Court's authority to redress conditions-of-confinement issues is severely limited within a criminal case"). For example, in *Yandell*, No. 2:19-CR-00107-KJM, 2021 WL 4777113, at *4, a defendant's allegation that he was not receiving reasonably adequate medical care in violation of the Eighth Amendment, and that he was housed with mentally ill inmates who keep him awake by banging and screaming throughout the night, were found not related to the right to counsel or exercise of trial rights. In *Luong*, CR 99-433WBSGGH, 2009 WL 2852111, at *1, defendant's requests for access to the law library and to be issued orthopedic shoes were not related to a claim for access to counsel.

In this criminal case, Defendant's claims about the conditions of his confinement are more appropriate for a civil action, not this criminal case. None of the parties responsible for – and able to best speak to – the conditions of Pike are parties to this criminal case. This is important because Defendant's allegations about his prison conditions are disputed. In order to achieve appropriate and fair litigation in this matter, the correct parties must be joined. That can only occur through civil litigation. This is yet another reason a civil suit is the correct vehicle for

Defendant's claim.

### c. Pace Does Not Raise Access to Counsel or Trial Right Claims

Nevertheless, even taking Defendant's allegations about conditions at Pike as true, the defendant does not raise any claims that relate to access to counsel or a trial right. None of the defendant's allegations identify a specific instance in which he could not communicate with his attorney. Pace has entered his guilty plea and is awaiting sentencing, so he is not preparing for trial. As noted above, access to counsel and exercising a trial right are the limited exceptions to the general rule that "conditions of confinement" cases should be pursued through civil claims. Therefore, the Court should deny the Motion because Pace has chosen the wrong forum.

### d. Misplaced Reliance on Habeas Relief

Defendant's reliance on habeas corpus relief in 28 U.S.C. § 2241 is misplaced. "Section 2241 habeas petitions are appropriate when an inmate seeks to challenge 'the very fact or duration of his physical imprisonment.'" *Rodriguez v. Ratledge*, 715 F. App'x 261, 265 (4th Cir. 2017); *see also Huerta v. Hawk–Sawyer,* 16 Fed. Appx. 916, 917 (10th Cir.2001) (noting that several circuit courts have declared that "§ 2241 is to be used in cases challenging the fact or duration of federal custody, and not in cases merely challenging prison conditions") (citation omitted); *Falcon v. United States Bureau of Prisons,* 52 F.3d 137, 138 (7th Cir.1995) (if prisoner seeks "quantum change" in the level of custody, such as freedom, remedy is habeas corpus; if he seeks a different program or location or environment, then challenge is to conditions, rather than fact, of his confinement and remedy is under civil rights law); *Tucker v. Carlson,* 925 F.2d 330, 332 (9th Cir.1991) (challenges to the fact or duration of prisoner's confinement should be construed as a petition for habeas corpus under § 2241; complaint seeking damages for civil rights violations construed as an action under *Bivens v. Six Unknown Named Agents,* 403 U.S.

388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)).

"[A]lthough a § 2241 attack on the execution of a sentence may challenge some matters that occur at prison, such as deprivation of good-time credits and other prison disciplinary matters, this does not make § 2241 actions like 'condition of confinement' lawsuits, which are brought under civil rights laws." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811–12 (10th Cir. 1997); *see also McCain v. Garrity*, No. CIV.A. 3:02CV435, 2002 WL 32362032, at *2 (E.D. Va. July 16, 2002), *dismissed*, 53 F. App'x 275 (4th Cir. 2002) ("An action regarding the quality of medical care while incarcerated challenges a prisoner's conditions of confinement and therefore properly lies in a § 1983 civil rights action or a *Bivens* action. Thus, a writ of habeas corpus is inappropriate to procure the kind of relief that McCain seeks here.").

### d. The Bail Reform Act Does Not Support the Transfer or Release of Defendant Pace

Defendant also incorrectly relies on the Bail Reform Act by broadly citing sections 3142 and 3145 for the proposition that the Court has the authority to transfer Pace to a facility closer to North Carolina or release him from custody. Moreover, to the extent that Defendant's suggestion is true that many federal defendants in Pike will be filing similar motions, the government is concerned about the practicalities of entertaining Defendant's request, especially where there is no allegation of an inability to communicate with counsel while at Pike.[1]

Finally, Defendant's request to be released from prison pursuant to section 3143(a)(1) should be denied. Section 3143(a)(1) provides that, "Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by

---

[1] As of the filing of this motion, the undersigned is aware of several other similar motions being filed in ongoing criminal cases in this district.

8

clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)."

The exception to 3143(a)(1) is in subsection 3143(a)(2), which provides:

The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless—
(A)
  (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

  (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and

(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

Pace has plead guilty and should be detained. He has not presented any evidence or argument that justify his release before his sentencing. *See, e.g, United States v. Martinez*, No. 2:08 CR 11, 2008 WL 2413900, at *1 (W.D.N.C. June 11, 2008) ("It appears that none of the three qualifying circumstances as set forth under 18 U.S.C. § 3143(a)(2)(A)(i)(ii) and (B) exist. The undersigned is thus required by law to order that the defendant be detained.").

For the reasons stated above, Defendant's Motion should be denied

Respectfully submitted October 21, 2025.

RUSS FERGUSON
UNITED STATES ATTORNEY
 /s/ Kenneth Smith
Assistant United States Attorney
North Carolina Bar Number 17934
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: 704.338.3160
E-mail: kenny.smith@usdoj.gov

9

## **CERTIFICATION**

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the October 21, 2025.

/s/ Kenneth Smith
Assistant United States Attorney

10

Case 3:25-cr-00005-MOC-DCK    Document 29    Filed 10/21/25    Page 10 of 10